May it please the Court, my name is Sarah Simmons and I am representing the appellant, Mr. Isaac Kiniti. I'd like to reserve two minutes for rebuttal. Sure. In this case, we see the repeated application of incorrect standards of law and procedures that have resulted in a compound of errors and due process violations that have prejudiced Mr. Kiniti's removal proceedings. To begin with, the IJA applied an incorrect standard, which has been acknowledged by the BIA, in determining that Mr. Kiniti's conviction was a particularly serious crime. The BIA then applied the wrong standard in evaluating whether Mr. Kiniti was prejudiced by various actions of the IJA, which the BIA says were improper, such as conducting his own Internet research and failing to consider all of the evidence in the case that Mr. Kiniti wanted to present. They also failed to conduct an individualized analysis as required for removal or deferral of removal under the CIT and failed to recognize that the only evidence that supports withholding from removal, or not withholding removal and not granting relief under the CIT is the evidence that was improperly admitted by the IJA. So one of the questions that I have in this case is what is the appropriate remedy, assuming that we agree with you that there was a due process violation, and in particular, the Internet research, the ex parte analysis or finding of facts. It would seem to me that ordinarily when the trier of fact, the IJA, has violated due process, you just start over. Why isn't that the right answer here, to just say due process violation, new hearing, new IJA, just clean slate? You know, that actually, we believe that is the correct remedy here, that we don't know, as this Court has said, how the balance would have come out had Mr. Kiniti started on a clean slate with the IJA in the absence of improperly admitted research. Well, you do make some arguments about trying to hold on to the parts of the case that you liked the outcome of, but it seemed to me that it had to be, at least potentially, a kind of all-or-nothing due process violation being an all-or-nothing proposition. The part of the case that we would like to remain is that the we don't believe that the record should be able to be added upon. Well, see, that's what I don't understand. That's exactly the point that I made. If you get a new hearing before a new IJA, everything starts over. It doesn't mean the government can't try better to prove its theory. For that, appellant relies on two cases that are before this Court, Notash and Ruiz-Vidal. In both of those cases, this Court refused to allow on remand the IJA to supplement the record when the government had failed to prove on its first chance that the crime was a particularly serious crime. In this case, the government would again need to try to prove that Mr. Kiniti's record was a particularly serious crime. But see, the difference is here, it seems to me. There's a tainted hearing if we accept your theory about the extra record material. And when that happens, I don't see how you can just undo half of it and keep the parts you like and toss out the parts you don't like. I guess that's my concern about your theory or your argument. But the particularly serious crime determination wouldn't bar his claim under CAT, would it? No, it would not. The particularly serious crime determination only relates to the withholding of removal. The errors under CAT were related also to the due process violation, which tainted the entire hearing, in that it's hard to take away what the government, the IJA already saw, and put him back in a clean slate. Arguably, you would even have a stronger case under your CAT claim today than even at the time. The government could put in more evidence and so could you. This is true. We believe, though, that under Natasha and Maurice Vidal, the case says the government has one bite at the apple, doesn't get a second bite at the apple. They already attempted to prove their case and didn't put the correct documents in the record. So it's not that the case can't be retried, but the record is what it already the record is frozen at the time of appeal. And Maurice Vidal, this court held that the record on remand would consist only of those documents already on the record, because in that case, this court has held that the documents didn't exist in the record that were sufficient to conduct a individualized case-by-case analysis under Francescu. And even though those documents likely existed in that case, when the court remanded, the court said the government had already had it shot to put the proper documents in the record. It failed to do so, so it had to go ahead and try to prove its case based on the documents that were in the record at the time of appeal. Well, isn't your client interested in introducing evidence, current evidence, that changed country conditions? He would like to introduce the evidence that the I.J. judge prohibited him from introducing. He actually had evidence with him that the I.J. had asked him to bring to the court hearing. And then when the I.J. made his credibility determination, he cut off the hearing. And this court has held that that creates a presumption of prejudice and due process violation when a judge makes a credibility determination and refuses to hear extra evidence. So Mr. Kennedy would like to supplement the record with those documents that he had at that time. Any other documents as to current country conditions would not be documents that Mr. Kennedy is getting a second bite at the apple at arguing. Those are documents that show that conditions have actually changed. Nothing has changed in regard to his condition or his conviction. That is still the same as it was at the time of the I.J. hearing and the time of appeal. So what were the documents the government put in to prove the crime of conviction? The government put in. It was a. Let's see, the information was there and the document that has a summary of the charges. And there was the appellate record, the Internet point out showing that his appeal had been affirmed. But there was nothing. The other documents that can be considered under different testing that were not there are the jury instructions, any sort of instructions that the judge made, any sort of details about the conviction so that the analysis couldn't be made as to the particular circumstances of the crime. So what you're asking to do is what Ruiz Vidal did in an opinion written by Judge O'Scanlan that says, just say on that point the government failed to meet its burden. That's correct. On this particular issue. Even though we need to remand. For example, we couldn't find he was credible on this record because there hasn't really been a determination. That's correct. I mean, a proper determination. Right. The I.J. would have to redetermine credibility under a correct standard and not conducting improper research and things like that. But yes, that's exactly what we're asking that Justin Ruiz Vidal. But did he have a letter or some correspondence that was referred to when he was before the BIA? Is that in the record? No, it's not, Your Honor. So you don't want to get that in the record. That is potentially something that Mr. Kennedy would have wanted to address. We don't know what Mr. Kennedy would have put into evidence had the I.J. not improperly cut off the hearing. And this court has held that that is prejudicial, even if we don't know what he would have put in, just the fact that he says he would have put something in the record. And so, yes, there is the letter that he submitted to the BIA. That's not actually in the record at this point because it was submitted after this was already on appeal. Okay. You're handling this matter pro bono. Yes, Your Honor. And you're with Morris Enforced. Yes, Your Honor. All right. Well, thank you. We'll hear from the judge. May it please the Court. William Silvis for the Attorney General. The Petitioner, in this case, is a citizen and native of Kenya. He's removable for having been convicted of two felonies. There's really just two issues before the Court here. First is whether the Board's determination that the Petitioner failed to establish his burden of proving that he is eligible for withholding of removal is established by, is supported by substantial evidence. The second issue is whether the Petitioner in this case, or the Board's determination that the Petitioner failed to establish that he is eligible for the protection of deferral of removal under the withholding, deferral of removal under the Convention Against Torture is also supported by substantial evidence.  On the first issue, whether the BIA's decision on the withholding of removal is Well, this immigration judge didn't give him much of a chance. He kept beating him up all throughout the hearing. Well, I mean, which Attorney General are you representing? I'm sorry, Your Honor? Which Attorney General are you representing? Are you asking the current Attorney General? Yeah. The status quo? I don't believe there's been a vote yet. I know that the acting Attorney General is Mr. Phillip, but I don't. Yeah. But the other guy is gone. That's correct, Your Honor. All right. Just turning to the point, I think what the Board acknowledges in its own opinion that there was some, as the Board characterizes, improper conduct. So in reaching its opinion on withholding of removal, it actually assumed he was credible. And the IJ's alleged misconduct in this case really just goes to credibility. It doesn't go to the required nexus that you must show to establish a withholding of removal plan. So in this case, what the Board did is it looked to whether the testimony and any of the evidence that the petitioner submitted to that immigration judge established the required connection between this alleged persecution and one of the protective grounds in the statute. And the Board looked at the evidence and said that it failed to establish that nexus. And the evidence of record just doesn't compel a conclusion to the contrary. And that's the standard before the Court today. Let me ask you, is this gentleman still detained? Yes, he is, Your Honor. So how long has he been in custody? Is he in San Diego? He's in El Centro. I mean, El Centro. Yes. And how long has he been? How long has he been detained, Your Honor? Yes. I think since he was – since the initial hearing, at least. So I know he filed his briefs with the Court since at least 2004. But I will note for the Court that he does – He's been locked up for five years already. That's correct, Your Honor. And is he part of this – there's a lawsuit, isn't there, regarding conditions of immigration detainees? That's correct, Your Honor. And that lawsuit was brought by the ACLU. Yes. Is he part of that lawsuit? I think we're talking about the same one. I was going to get the case reference for you. But that case actually was dismissed in January. I had a question about your brief. There is an assertion in the brief that there are other members of the Conditioner's family that are still living in Kenya safely. But I didn't see a record citation, and I was wondering, who are the relatives and where will I find that in the record? That are still living in Kenya safely? Yes. But what is – who are they and where will I find that information in the record? I don't have an exact citation for you, Your Honor. I think that they were referring to the Petitioner's testimony itself that seemed to indicate that he still had relatives that were in Kenya. Okay. So you're just relying on what he testified to about that. Right. Correct. I just wanted a note for the Court, since you asked. When was this case dismissed? Are you talking about the class action? Yes. I was just getting a cite for you. Class action case dismissed. If we're referring to Kennedy v. Meyer, that's a 305CB. What is the name of the case? It's a Kennedy v. Meyer. Kennedy? Kennedy. The Petitioner's family. Oh. Versus Meyer. It's 3,05CV1013. 3,05? Yes. Civil. CV. Civil. What court dismissed it? This is Southern District, California, San Diego. Dismissed on January 28th. January 28th. I just also wanted to note that. So they'll probably be appealed. Well, good chance they'll be appealed. I also want to note for the Court that the Petitioner's case has a bond hearing scheduled for this Friday. He has a separate habeas action that's proceeding, and he does have a bond hearing scheduled for Friday. Based on my review of the record of that proceeding, it looks like there's a motion for continuance filed by his pro bono counsel. In that case, it's not his counsel here today, but for some continuance based on some other workload issue. But he does, indeed, have a bond hearing scheduled under the Casas issue, Casas case. Would you comment on the sort of procedural issues that were being discussed with opposing counsel? Assuming that we conclude that there was a due process violation, what should happen next? Well, in this case, assuming that you do conclude there's the board recognized the problem and turned its analysis away from this alleged due process issue. So I think that the board's decision can be upheld and the petition denied based on that alone, on the board's decision alone without getting to the due process issue. But to address your question, if a remand, if the Court finds a remand is appropriate, it should be remanded and the board's ability to determine any of the factual issues shouldn't be limited in any way. But didn't the BIA actually commit, I mean, even in the part of the decision that you think should be upheld, the BIA committed legal error, for example. He said there was no nexus to any enumerated group. And, of course, there was. It was a family, and we've held that a family is a particular social group. And that still remains there, especially for the withholding claim. So that was just simply legal error. I think the nexus is, in this case, it wasn't the fact that a social group, a family, couldn't be a particular social group. I think the error, or I think the BIA's finding is the lack of nexus, that it requires the Petitioner to show that his — there's no evidence of past persecution in this case. So he was not — But he doesn't have to show past persecution of himself in the withholding. Correct. But he still has to show that the nexus between the persecution that he fears, if returned to Kenya, is entitled — there's some nexus between this protected group. And his testimony, if taken, is true, which it probably should be, given that the only ground remaining for the IJ's adverse credibility determination is an inconsistency about whether his mother is alive. And that doesn't go to heart of the claim. So if you take his testimony as true, then he says his family, because they were part of the regime that was previously in power, has been persecuted. And they're persecuted because they're part of that family by the current people who thought that the former people persecuted them. I think the Board looked at all of the evidence and assumed that he was credible and still said that it wasn't enough. And there's — What I'm saying is — what I'm suggesting is that the Board made several legal errors in that analysis. Do they get to do a do-over, or do we correct their legal errors and just grant them relief on their withholding? I think with the legal error we're talking about, I just want to clarify, to the extent that the Board might have had a legal error with whether it was a particular social group, I think that it looked at the evidence and said, even assuming it was a social group, that there was not enough evidence to show that his persecution was on account of the social group itself. It's not simply just the fact that — But there's two problems with that. One is, if you take his testimony as true, then there is, because his testimony saying alone does not need to be corroborated. You agree with that, right? Correct. And the second thing is that he had additional evidence, and the I.J. would not let him introduce that evidence. The I.J. asked him to bring it, and he brought it, and the I.J. cut him off. And I guess the third issue you have here is that he was pro se at the time, and if you read the transcript, you know, the I.J. was kind of bullying him. So you have legal error plus due process violation of the hearing itself. I just wanted to note, there's no evidence that I.J. in fact cut off or in any way limited the Petitioner's ability to add any additional evidence. If you look at the record of the transcript of the hearing, he said they took a recess and then resumed the following day, and that was to provide the Petitioner with the opportunity to bring in the additional evidence. Now, I submit to you that if you look at it, there's no additional evidence added, but it doesn't look as if it was actually brought by the Petitioner or that the I.J. just dismissed it offhand. I mean, that evidence is just absent from the record. I know it's been an issue in this case, but I don't see where that is in the transcript, how we could conclude that in any way the I.J. just refused to review evidence that the Petitioner brought. Well, his grandfather was in prison, right? Is that right? In this case? His grandfather's in prison? I don't believe that's the case. His father? His father had been detained, and he does not know the current – as of the briefing of this case, he did not know the current whereabouts of his father. I don't believe there's anything about his grandfather in the record. His father had been detained briefly for a period of 10 days, and he did not know the current whereabouts of his father at that time. That's where it gets to the real issue of whether there's just enough. I mean, we do have brief detention. We do have things that may amount to persecution. But I think when the Board reviewed all the evidence, it just said, look, this isn't enough. He hasn't established this nexus. And there's just – the evidence of record at this point does not compel a conclusion that that was incorrect determination by the BIA. Okay. So his father and his sister were dismissed from their jobs. They were detained. They were beaten, denied food, sleep, and then they were released. And they finally had to leave the country, and he doesn't know where his father is now. That's not persecution? That may well amount to persecution. Again, when I get back to the Board's decision, it's the nexus between the persecution and whether that is to a group, a particular social group within it in this case. Or the other basis that he argued was imputed political opinion. But the group is his family, his father, his sister, his grandfather. That's a particular social group, right? I think there's a little – with the law in that area, I think it's a little unclear whether a particular social group itself. I believe the Supreme Court remanded an issue to the BIA on that issue alone. I can get the citation for you. But I think if it is a particular social group, I think it has to be established We have cases that so hold. With the – in terms of the – rather than just the family itself, I think the social group has to be in this case. No. We have cases that hold a family can be a social group. Well, in this case, as well, the Petitioner's connection to – obviously, the Petitioner's connection to his family is, you know, indisputable. But whether if he was returned to Kenya, that they would automatically say – the other members of his family were closely connected to the government, had been – at least his sister and his father had determined – assuming he's credible, had been employees of the former government. Now, there's no evidence in the record in Mr. Kennedy to so testify that he had any connection to the government itself. And so the fact that if he were returned in some way, he would be found and persecuted in the same manner, I mean, I think that's the problem the Board had, that even assuming that the law holds that a social group can be a – a family can be a social group, but I think there still needs to be a connection to his persecution would be. Haven't most of the members of his family fled? Fled from? Kenya. I don't think that – the testimony was just about a few of the family members. I don't know if there's, you know, the arguably tainted evidence in this case is the grandmother, that it's assumed that she hadn't, but we won't address that since there's the violation, since the Board didn't rely on it. But I don't know that there's any evidence that most of his family members have fled. I mean, he talked about a few members of his family. Well, the grandmother – the grandmother, as I – as I understand it, she fled to died. I think it was his son. She was attending a funeral. And – and then she – she died shortly thereafter. Well, taking – looking at the obituary that the immigration judge found that Mr. – That's inadmissible. Sure. We don't know who writes those obituaries. Well, that's true, Your Honor, but it was brought up and the petitioner in this case had a chance to confront the evidence. He had a chance to file a motion to remand to challenge it. He had a chance of a hearing. He said he didn't know his grandmother had died. You know, he'd been in prison for a long time here. It'd been five years, right? And that – that the first time he found out about the fact that his grandmother died is when the – when the – when the immigration judge went on the Internet, came up with all of this. He didn't know that. But the obituary about the grandmother, what that shows, though, or tends to show, is that he never left – that she never left Kenya and that she was living a very open life in Kenya and possibly never did leave. Well, I'm not supposed to even be considering that. So, I mean, I probably shouldn't be arguing it. I mean, even the BIA said that was improper. Well, I just – we were talking about whether that supported the persecution part. The BIA didn't even rely on it. But to the extent that the judge wanted to ask questions, I just was addressing the fact that, you know, this was presented – the Petitioner had a chance to refute it in any way. He might not have known about the death, but it certainly undermined his claim. I think that for purposes today, since the BIA didn't rely on it, I don't think this Court does. The issue is whether the record evidence compels a conclusion that the Board reached the wrong decision. We're talking about the CAC claim now, huh? We're – well, we're – they're intertwined to the extent that – Yes, they're intertwined, yes. Right. Yeah. I mean, other evidence that would come in was that I believe last year there were major riots in Kenya after elections.  600,000 were internally displaced. Are you – are you referring to a specific report, Your Honor? Yeah. Okay. But not – this isn't part of the record. That country report, yeah. This is – so this wasn't something part of the record? Well, I don't know what the IJ was looking at. Well, it's a recent report. I mean, the decision was a couple years ago. Yeah. But I think the issue there even is generalized violence in a country is not persecution or would not in any way show that it's more likely than not that this particular petitioner would be tortured if returned. And that's – it's a high standard, admittedly, but generalized violence or civil unrest in the country is not sufficient for the protection of deferral or removal. All right. We're over your time. We're going to have to remove you. Thank you, Your Honor. Thank you. Would you like a minute for rebuttal? Yes, Your Honor. All right. I just want to address a few quick points. First, counsel stated that there's no evidence that appellant was cut off from presenting evidence in the hearing, which is a due process violation. This Court has stated that any sort of cutting off after credibility determination gives an inference of prejudice. And in the record, on its record, page 183, lines 10 through 12, the judge began the day by asking, saying, Mr. Kennedy was going to get some correspondence, but before we get to your documents, I want to – I realize there are some things I need to clear up. Then he made his credibility determination and said he wasn't credible. And this Court has said that we may infer prejudice even absent any allegations as to what the petitioner's witness might have said if the IJ had not cut him off. And this Court has also stated that even if this is outside the record and we don't know what would have been stated here, as is the case, that that's sufficient. That in Zola Tuchin v. Gonzalez, this Court said that when the statements were outside the record, because the statements are a cognizable due process challenge, even if these statements did occur, we have to take it for granted that the appellant did have these documents and that he was going to submit them since the judge didn't give him a chance to prove otherwise. And then related to the Board's decision, following along what Judge Borlaug stated, that the Board's decision contained many legal errors. There's another one that keeps it from being able to upheld, be upheld, which the government actually conceded in their opposition brief, which stated that the Ninth Circuit has established a standard for determining whether there's prejudice upon a due process violation, and the BIA actually applied the incorrect standard, which was stricter than they were supposed to apply. So on that basis alone, we don't know whether the IJ's actions prejudice Mr. Kennedy because he's never had a chance to have that analysis made under a correct standard which is less strict than the one the BIA made. All right. Thank you very much. Thank you. The matter will stand submitted. And we'll go to the next matter, Castro v. the Attorney General. And
judges: Pregerson, Graber, Wardlaw